IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                           Case No.  23-10096-JWB

RICHARD EMIL CHRISTENSEN,

      Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's motion to vacate his sentence through 28 U.S.C. § 2255.  (Doc. 73.)  The motion is briefed and ripe for decision.  (Docs. 74, 84.)  Defendant did not file a reply brief and the time for doing so has now passed.  Defendant did file a new exhibit in support of his motion.  (Doc. 84.)  But the new exhibit is the exact same declaration already attached to his original motion.  (*Compare* Doc. 85-1 *with* Doc. 74-1.)  Defendant's motion is DENIED for the reasons stated herein.

### I.  Facts and Procedural History

On September 6, 2023, Defendant was indicted on one count of aggravated sexual abuse of a minor and one count of abusive sexual contact of a minor.  (Doc. 1.)  On November 5, 2024, Defendant pled guilty to one count of abusive sexual contact of a minor with the remaining count dismissed as part of a plea agreement.  (Docs. 33, 35.)  The following facts were admitted as part of his plea agreement:

> Between October 21, 2012, and October 19, 2016, while residing at McConnell Air Force Base in Wichita, Kansas, the defendant Richard Emil Christensen would repeatedly and intentionally touch the genitals of Minor Victim, using his hand and penis. The defendant did so to arouse himself and gratify his sexual desire. At the time of the contact, Minor Victim was a child between the ages of 6 and 9 years.

1

> When Minor Victim later disclosed the abuse to her mother, the mother confronted the defendant and he admitted to sexually abusing Minor Victim.

(Doc. 35 at 2.)  On February 4, 2025, this court sentenced Defendant to 35 years in federal prison. (Docs. 39, 40.)  Defendant appealed his sentence to the Tenth Circuit pro se, but the appeal was dismissed for lack of prosecution.  (Doc. 68.)  Defendant also filed several meritless pro se motions in this court, all of which were denied.  (Doc. 67.)

Finally, on February 23, 2026, Defendant filed the instant motion to vacate his sentence through 28 U.S.C. § 2255.  (Doc. 73.)  In his motion, Defendant argues that there are two grounds that support vacating his sentence.  (Doc. 74 at 8–11.)  Both are based upon ineffective assistance of counsel.  First, he claims that he "suffered ineffective assistance of counsel for his attorney failing to investigate his defenses of innocence."  (*Id.* at 8.)  Second, he claims that he "suffered ineffective assistance of counsel for his attorney to investigate his sentencing evidence."  (*Id.* at 9.)  The court rejects both of these rationales and for the reasons explained below, declines to set a hearing or grant Defendant's requested relief.

## II.    Standard

Section 2255(a) of Title 28 of the U.S. Code provides in part that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence."  Unless the motion and the record of the case conclusively show the prisoner is entitled to no relief, the court must promptly grant a hearing.  28 U.S.C. § 2255(b).  However, if it plainly appears from the motion, any attached exhibits, and the record that the moving party is not entitled to relief, the judge must dismiss the motion.  Rule 4(b),

Rules Governing Section 2255 Proceedings. *See United States v. Santiago*, No. 19-10055-JWB, 2021 WL 663201, at *3 (D. Kan. Feb. 19, 2021).

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea." *Lee v. United States*, 582 U.S. 357, 363 (2017) (citation omitted). "To demonstrate that counsel was constitutionally ineffective, a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." *Id*. (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Strickland*, 466 U.S. at 689. To establish prejudice, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## III.    Analysis

The court will organize its analysis around the two grounds that Defendant identifies in his motion. As explained below, both grounds fail to support the motion to vacate.

### A.    Failure to Investigate a Defense of Innocence

Defendant argues first that he "did not engage in the sexual assault alleged, that no sexual assault occurred, and that the alleged victim was pressured to cooperate in the investigation." (Doc. 74 at 8.) He says that "[s]ince the time of the case, the alleged victim has made statements indicating that she does not remember anything or does not remember anything specific." (*Id.*) Defendant also claims that he only met with his attorney "no more than 2-5 hours" total with "meetings lasting no more than 30 minutes." (*Id.*) If his attorney had investigated the matter

3

further, Defendant surmises, additional information would have been discovered that would have prompted Defendant "to go to trial rather than plead guilty." (*Id.* at 9.)  In short, Defendant alleges that his attorney's failure to investigate the facts induced him to plead guilty. (*See id.* at 8–9.)

The government argues that Defendant's allegations are deficient because he does not allege that his counsel's alleged failings "caused him to enter his guilty plea unknowingly and involuntarily." (Doc. 84 at 11.)  The government also contends Defendant's allegations are conclusory and lack factual detail. (*Id.* at 12.)  The government has produced an affidavit from Defendant's former attorney which rebuts a number of the allegations and assumptions that Defendant rests his motion on. (Doc. 84-1.)  Lastly, the government argues that even if the court were to assume that Defendant's representation was constitutionally lacking, he must show that he was prejudiced because of it, and he has not so shown. (Doc. 84 at 16–19.)  The court agrees with the government.

When a motion to vacate arises following a plea of guilty, the arguments available to a defendant decline sharply. *See United States v. Spaeth*, 69 F.4th 1190, 1206 (10th Cir. 2023) ("That standard leaves habeas petitioners with one avenue to pursue pre-plea constitutional violations—ineffective assistance of counsel that causes their pleas to be involuntary and unknowing.") (citing *Tollett v. Henderson*, 411 U.S. 258, 266 (1973)).  The court agrees with the government that Defendant has not alleged that his counsel's actions, even if Defendant's representations are true, caused his guilty plea to be involuntary or unknowing. *Id.* at 1213 ("When a defendant voluntarily and knowingly pleads guilty, the defendant acknowledges that unconstitutional conduct preceding the guilty plea is irrelevant to the admission of factual guilt. As a result, we do not assess the merits of pre-plea constitutional claims but instead ask whether

ineffective assistance of counsel caused defendants to enter their guilty pleas involuntarily and unknowingly.").

Defendant's allegations are couched in terms of actual innocence and rely principally on the claim that the victim has allegedly been making statements "[s]ince the time of the case . . . [that] she does not remember anything or does not remember anything specific." (Doc. 74 at 8.) But Defendant provides no further details and instead shifts to alleging he "communicated with Attorney Kerns no more than 2-5 hours at most with meetings lasting no more than 30 minutes." (*Id.*) Defendant also claims that his attorney did not discuss the specifics of the investigation he conducted nor explain what the investigation found. (*Id.*) This argument is perplexing, particularly in light of the affidavit that Defendant's counsel filed in the course of briefing this motion. (Doc. 84-1 at 2) ("11. During your discussions with Mr. Christensen, did he ever communicate to you that he had a potential defense to the charges? No."). Given that Defendant's claim now is that the victim no longer remembers the incidents and implies that they did not occur, it is baffling that Defendant would not have, pre-plea, insisted on his actual innocence to his counsel. (*Id.* at 3.) ("15. Did Mr. Christensen ever tell you that he was innocent? Never."). Defendant did not file a reply brief and thus did not rebut his former counsel's attestations. Additionally, neither Defendant's declaration nor his motion indicates that he ever told his attorney he was innocent. (*See generally* Docs. 74; 74-1.) As Defendant ought to know what happened during the events to which he pled guilty, it is illogical for him to suggest that his attorney should have pursued further investigation into an actual innocence defense when Defendant himself never professed to be innocent.

Moreover, upon review, the government's coterie of other arguments also have merit. There is very little factual matter in Defendant's motion that support his allegations that his

5

attorney performed an inadequate investigation and that the victim has made statements saying she does not remember. (*See generally* Doc. 74 at 8–9.) This renders the allegations conclusory, and courts have good reason to be skeptical of post-plea conclusory allegations that suggest Defendant would have changed his plea. *Heard v. Addison*, 728 F.3d 1170, 1184 (10th Cir. 2013) ("In sum, we remain suspicious of bald, post hoc and unsupported statements that a defendant would have changed his plea absent counsel's errors, and if the defendant can muster no other evidence of how he would have responded if he had received effective assistance of counsel, the inquiry will focus on the objective evidence."). Additionally, the government is right to point out that all of Defendant's allegations are contradicted by a sworn affidavit from Defendant's former attorney. (*See generally* Doc. 84-1.) The court finds this particularly compelling, especially in the absence of detailed factual allegations. *See Casey v. United States*, 940 F.2d 671 (Table), 1991 WL 142644, at *2 (10th Cir. 1991).

Finally, the government is correct that Defendant's allegations fail to demonstrate anything "alter[ing] the evidentiary balance of the case" that Defendant's attorney could have discovered during a hypothetical expanded investigation. (Doc. 84 at 19.) The bald claim that the victim has, "[s]ince the time of the case", made statements saying she no longer remembers, is not evidence that would have been available to Defendant's attorney *at* the time of the case. (Doc. 74 at 8.) It is likewise not clear that even if such evidence were available at that time, that it would vitiate Defendant's apparent confessions to three other individuals. (Doc. 37 at 7.) Nor does it overcome Defendant's own statements at his plea hearing. (*See* Doc. 82 at 5–6, 24 (answering "Yes, sir" when asked if he "intend[s] to plead guilty to count 2 of the indictment which charges you with abusive sexual . . . contact against a minor[.]"); at 6 (answering "Yes, sir" when asked if the facts in the indictment were what he "plann[ed] to plead guilty [to] today."); at 10 (answering "Yes, sir"

6

when asked if he and his lawyer "had enough time to discuss the criminal charges against [him], and [his] proposed guilty plea, and also to carefully review everything in the indictment, [his] plea petition, and [his] plea agreement."); at 23 (answering "Yes, Your Honor" when asked if everything the prosecutor "said here in court about the facts of your case [is] true."); at 28–29 (answering "Guilty, sir" when asked how he pleads to count 2 of the indictment.) (modifications added)).

Therefore, nothing in Defendant's allegations impugn counsel's performance nor indicate prejudice against Defendant that would render his plea involuntary or unintelligent. Accordingly, Defendant's motion to vacate on ground one is denied.

### B.    Failure to Investigate and Present Mitigating Evidence at Sentencing

Second, Defendant argues that he "submitted his personal information report to his counsel asking that it be used in his sentencing" and it was not used. (Doc. 74 at 9.) Primarily, this information concerned Defendant's mental and physical health conditions. (*Id.* at 10.) Defendant argues that his counsel neither investigated nor presented this information at sentencing which he contends would have mitigated his sentence. (*Id.*)

The government argues that Defendant's counsel's performance was "neither deficient nor prejudicial for three main reasons." (Doc. 84 at 20.) First, the government argues that counsel did not need to present the requested records because that information was already included in the pre-sentence investigation report ("PSR"). (*Id.*) Second, the government contends that the court informed the parties that further medical records would not influence the sentencing decision. (*Id.*) Finally, the government points to the court's comments at sentencing as indicating that even had counsel presented the records, it would have not altered the sentence. (*Id.* at 21.) Ergo, it argues Defendant was not prejudiced. The court again agrees with the government.

To show the prejudice required to support a claim of ineffective assistance of counsel at sentencing, Defendant must "show there is a reasonable probability that but for [his counsel's] deficient performance, he would likely have received a lower sentence." *United States v. Washington*, 619 F.3d 1252, 1262 (10th Cir. 2010). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome'" of the proceeding. *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (quoting *Strickland*, 466 U.S. at 694). "Mere speculation" will not do. *Id.* (citing *United States v. Boone*, 62 F.3d 323, 327 (10th Cir. 1995)). Defendant has failed to carry this burden.

For one, the court is inclined to credit the government's argument that the medical conditions Defendant claims his counsel did not raise at sentencing were already considered by the court in the PSR. (Doc. 84 at 20.) Indeed, this is correct. (Doc. 37 at 14–16) (covering Defendant's "Physical Condition", "Mental and Emotional Health", and "Substance Abuse"). *See United States v. Garcia*, No. 12-CR-429-REB, 2016 WL 106487, at *4 (D. Colo. Jan. 11, 2016) ("The facts upon which Ms. Garcia relies to support her IAC claims were known to the court at sentencing."). This alone militates against the conclusion that had counsel raised other medical records at sentencing, it would have altered the Defendant's sentence. Moreover, the government is also correct that the court informed the parties at sentencing that it did not "think it will be helpful" for the prosecution to present Defendant's additional medical records from the VA. (Doc. 81 at 26.) This indicates that counsel's hypothetical presentation of further medical records would not have made a difference at sentencing. Nothing in Defendant's filing makes clear the additional records are materially different from what was previously provided to the court. *See James v. Gibson*, 211 F.3d 543, 557 (10th Cir. 2000) ("Given the aggravating evidence, there is no reasonable probability the additional and largely cumulative mitigating evidence would have

8

caused the jury to reach a different result.").  And finally, the government has also highlighted the court's sentencing comments that, were it within its power to do so, the court would have imposed an even harsher sentence.  (Doc. 81 at 34.)  These three factors compel the court to conclude that Defendant suffered no prejudice from counsel's decision not to furnish these records at sentencing. This defeats Defendant's second ground for vacatur and therefore his motion is denied.

## IV.    Conclusion

For the foregoing reasons, Defendant's motion for to vacate his sentence is DENIED. (Doc. 73.)  An appeal from a final order on a § 2255 motion may not be taken absent a certificate of appealability, which may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  The court concludes Defendant has failed to make such a showing and accordingly a certificate of appealability is DENIED.

IT IS SO ORDERED.  Dated this 16th day of July, 2026.

s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE